IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:03cr245-01 |
| v. | No. 3:06cv1039 |
| JOHN F. TURANT, | (Judge Munley) |
| Movant / Defendant | |

## MEMORANDUM

Presently before the Court for disposition is John F. Turant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Turant advances seven arguments in support of his motion. The motion is opposed by the United States of America ("government" or "United States"). The matter has been fully briefed and is ripe for disposition.[1]

**BACKGROUND**

Movant, John F. Turant, is an inmate at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Turant conspired with Russ. R. Luciano to defraud investors using three bogus hedge funds. Turant entered a guilty plea to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371 and one count of mail fraud in violation of 18 U.S.C. §§ 1341-2, on February 23, 2004. (Doc. 135, Notes of Testimony (hereinafter "N.T.") 2/23/2004, 24-25). On May 25, 2005, Turant was sentenced to 84 months imprisonment. (Doc. 121, Criminal Judgment).

Between 1999 and 2003, Turant and Luciano operated three separate hedge funds. (Doc. 135, N.T. 2/23/2004 at 13). The pair solicited investors to contribute to their three funds through and raised millions of dollars from more than 100 investors. (Id. at 13, 17-18). In order to convince the people to invest,

---

[1]After the government filed its response to the defendant's motion, the defendant moved for extra time to file a reply brief. We granted an extension, but no reply was ever filed. (Doc. 148, order granting extension of time).

Turan and Luciano made false and fraudulent representations regarding the performance of the funds, the safety of the investment and the identity, experience and background of the fund managers. (Id. at 13).

Turant and Luciano concealed the actual portfolio values of the funds and the significant losses that the funds had sustained, instead indicating that the funds had never experienced a losing month. (Id. at 13-14). In actuality, the funds never had a positive return and from the beginning lost significant money. (Id. at 14). Turant and Luciano told investors that their money would be used to invest in securities, but only a small amount was so invested. The rest was used to pay off earlier investors who withdrew their funds, pay salaries, bonuses and commissions to Turant and Luciano. (Id.). The pair hid their losses by creating fraudulent monthly account statements, showing phony profits and mailing these statements to the investors. (Id. at 15). They also mailed to the investors phony semi-annual reports, fictitious Internal Revenue Service tax returns and fake brokerage account statements all of which showed profits when in fact there were only losses. (Id.).

In early 2003, the Security Exchange Commission ("SEC") began an investigation. Turant testified before the SEC. He admitted that all the money was gone, and that he had concealed the losses from investors by causing phony reports and statements to be mailed to the investors. (Id. at 16).

Turant was indicted on September 10, 2003. (Doc. 1, Indictment). On September 15, 2003, the court appointed Attorney James A. Swetz to represent him. (Doc. 13, Appointment of Swetz). On September 17, 2003, Turant entered a plea of not guilty. (Doc. 20, Not Guilty Plea). Turant signed a plea agreement on October 14, 2003 whereby he would enter a guilty plea to two counts of the indictment: mail fraud and conspiracy to commit mail fraud. (Doc. 138-3, Gov't

Ex. 4, Plea Agreement). Pursuant to his plea agreement, Turant cooperated by providing information against Luciano and participated in an another investigation. (Doc. 136, N.T. 5/25/2005, at 3).

Turant hired a local attorney, Brad Kurlancheek, for the change of plea proceedings. (Doc. 44, Notice of Attorney Appearance). Swetz withdrew as Turant's counsel at this time. (Doc. 46, Order Granting Withdrawal). On February 23, 2004, this Court accepted Turant's guilty plea on the two counts and scheduled sentencing for June 2, 2004. (Doc. 57, Order Granting Change of Plea). Turant's sentencing was postponed while he continued to cooperate against Luciano. In the interim, Turant sought a court-appointed attorney. (Doc. 70, Granting Motion to Withdraw as Attorney). This Court appointed Douglas Clark to represent Turant. (Doc. 72, Appointment of Counsel).

After the government secured Luciano's guilty plea on March 21, 2005, Turant's sentencing was scheduled for May 25, 2005. (See Doc. No. 112, Granting Motion to Continue Sentencing). Turant appeared with Attorney Clark facing a guideline range of 168 to 210 months imprisonment. The government filed a motion for downward departure suggesting a sentence of 84 months. (Doc. 115, Motion for Downward Departure at 5). Based on his cooperation, Turant was sentenced to the government's recommendation of 84 months imprisonment, three years supervised release, $1.4 million restitution and a $200 assessment. (See Doc. No. 121, Judgment). No appeal was filed.

**Discussion**

Defendant Turant moves for relief under 28 U.S.C. § 2255, which reads in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

> Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> ...
>
> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255.  Turant raises seven issues in his motion all dealing with the constitutionality of his conviction/sentence.[2]  We will address these issues *in seriatim*.[3]

    1.  Ineffectiveness of counsel

First, Turant claims Attorney Swetz provided ineffective assistance of counsel by failing to advocate for Turant during a 5K1 hearing[4] and by advising him to sign the plea agreement without hearing the facts or conducting an investigation. The government responds that Kurlancheek, not Swetz,

---

[2]When Turant filed his motion, we ordered him to complete a notice of election pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999). (Doc. 132).  Turant elected to have his motion ruled upon as filed, that is as a motion under 28 U.S.C. § 2255.  (Doc. 133).

[3]Notably, defendant asserts that he does not seek to have his sentence vacated but feels that is sentence should be shorter because he entered into a plea agreement within two weeks of his arrest and gave considerable cooperation to the government.  (Doc. 149, correspondence from defendant).

[4]Section 5K1 of the United States Sentencing Guidelines provides that the government can move for a downward departure in the defendant's sentence if he provides substantial assistance.

4

represented Turant at his change of plea proceeding. Thus, the outcome would have been the same regardless of Swetz's allegedly ineffective assistance. The government also argues that Swetz'a assistance was within the range of reasonable professional assistance based on Turant's confession and the mass of evidence against him. We agree with the government.

To establish ineffectiveness of counsel, a defendant must meet the two-pronged test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). The two prongs are: "(1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." United States v. Nino, 878 F.2d 101, 103 (3d Cir.1989) (citing Strickland, 466 U.S. at 687-96). Both Strickland prongs must be met in order for relief to be granted. Id. at 104. In addition, we apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. Thus, we provide great deference to the counsel's representation in determining whether counsel was ineffective. Id.

We find no merit to Turant's claim. He is challenging his guilty plea. When defendant filed his motion to withdraw his plea of not guilty, and at his guilty plea, he was not represented by Attorney Swetz. Rather, he was represented by privately retained counsel, Attorney Brad Kurlancheek.[5] (See Doc. 46, order of January 14, 2004 granting Attorney Swetz' motion to withdraw as counsel and acknowledging Attorney Kurlancheek's entry of appearance; Doc. 56 motion to withdraw plea dated February 23, 2004 and Doc. 55 minute sheet of defendant's guilty plea held on February 23, 2004). Accordingly, we find no reasonable

---

[5]Defendant raises no ineffectiveness claim against Attorney Kurlancheek.

probability that the outcome of the proceedings would have been different without any of the errors that Attorney Swetz allegedly made.

    2.  Ineffectiveness: Attorney Clark

After defendant entered his guilty plea, Attorney Kurlancheek moved to withdraw his appearance from the case.   He indicated that he had been privately retained by the defendant but that the defendant was indigent and desired a public defender.  (Doc. 69, Motion To Withdraw Appearance).  The motion was granted and Attorney Douglas Clark was appointed to represent the defendant.  (Doc. 70, Order granting motion to withdraw, Doc. 71, Order appointing Attorney Clark).

Turant raises an  ineffective assistance of counsel claim against Attorney Clark by claiming generally that Clark failed to represent his best interests and failed to put forth due diligence.  Turant also claims that Clark did not file a direct appeal, which he requested  We apply the same standard for ineffectiveness here as we did above with respect to Attorney Swetz.

We find no merit to Turant's general claims of ineffectiveness or his examples of specific ineffectiveness.  He states that Attorney Clark played him a taped telephone message from the United States Attorney's office directing Clark to tell Turant not to speak with his co-defendant as they were close to a plea arrangement with the co-defendant. (Doc. 131, Section 2255 motion at 6). Attorney Clark then made no reply when defendant asked him who he worked for, the government or the defendant.  (Id.).  Also, defendant claims that Clark lied to him about working all weekend on his sentencing brief, when in fact he drafted it fifteen minutes before the sentencing hearing.  (Id.).  Plaintiff has asserted no prejudice with regard to these claims nor does he point out how the

sentence would have been different if Attorney Clark had performed differently.[6] As the government points out, Attorney Clark managed to secure an 84-month sentence for the defendant who had plead guilty and was facing a guideline range of 168 to 210 months (Presentence Report ¶ 67) and possible maximum of twenty-five (25) years in prison. (Doc. 41, Plea Agreement at 3).

As to Clark's failure to file an appeal, the Government requests a limited evidentiary hearing to settle this dispute. We agree that a hearing is appropriate. The Third Circuit Court of Appeals has held that "when a defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that the lawyer failed to honor it." Solis v. United States, 252 F.3d 289, 295 (3d Cir. 2001). We will defer ruling on this issue, therefore, until we hold the evidentiary hearing.

3.  Fifth Amendment, self incrimination

Third, Turant alleges that his Fifth Amendment right against self incrimination was violated during his April 2003 Securities Exchange Commission ("SEC") interview because he was not informed that his statements could be used against him. We find no merit to the petitioner's position. A defendant cannot attack a guilty plea by asserting that his constitutional rights were violated before the plea was entered. The United States Supreme Court has explained as follows:

---

[6]The sentencing brief filed by Attorney Clark is a typed twenty page document addressing six legal issues. It makes citation to appropriate legal authority and applies it to the facts of this case. (Doc. 118). It was filed one day before the sentencing hearing. (Doc. 119). It impossible that Attorney Clark wrote the brief "from start to finish" fifteen minutes before the sentencing hearing as the defendant claims.

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Additionally, "[w]hen a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees." United States v. Ruiz, 536 U.S. 622, 628 (2002). Of specific interest here, the defendant waives the Fifth Amendment privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 243 (1969), see also United States v. Lessner, 498 F.3d 185 (3d Cir. 2007) (explaining that "entering a plea of guilty, a criminal defendant waives his or her constitutional rights .... to exercise the privilege against self-incrimination."). Here, because the defendant pled guilty, he waived the right to raise these evidentiary issues.

4. Self incrimination

Similarly, in his fourth claim, Turant alleges that his right against self incrimination was violated in his May 2003 FBI interview because he was not informed that a criminal investigation was underway.

The Government points out that Tuant did not claim it would have affected his plea and such a challenge was waived in his guilty plea, adding that this Court confirmed the voluntariness of Turant's plea at the change of plea proceeding. For the reasons set forth in section 3 with regard to waiver of his self-incrimination claim, we will also deny this claim.

5. Medication

Fifth, Turant claims that some of the statements he made to the SEC and the FBI were made while he was on medication for bi-polar disorder. He claims

this testimony and the plea were thus induced by the medication.  We disagree. As set forth above, the fact that the defendant pled guilty waives claims that his pre-guilty plea statements were taken improperly by the various investigatory agencies.[7]

    6. Brady violation

Sixth, Turant claims the Government suppressed favorable information in violation of Brady v. Maryland, 373 U.S. 83 (1967) indicating that Luciano, and not Turant, was in charge of the hedge-funds.  We find no merit to the defendant's position.  In United States v. Ruiz, 536 U.S. 622 (2002), the United States Supreme Court held that such Brady material is related to the fairness of a trial, not to the voluntariness of a guilty plea.  Id. at 629.  In fact, a court may accept a guilty plea regardless of whether the defendant has a misapprehension of the strength of the government's case.  Id. at 630 (citing Brady, 397 U.S. at 757).  Accordingly, defendant's attack on his guilty based on the withholding of

---

[7]Defendant was evidently on medication at the time of the guilty plea, but does not challenge the validity of his plea because of it.  Such a challenge would be without merit.  During the guilty plea, the court the following exchange took place:
    THE COURT: Are you on medication?
    MR. TURANT:   Yes, I am.
    THE COURT:    Did you take it today?
    MR. TURANT:   Well, I take it at night.
    THE COURT:    But you understood everything I said so far?
    MR. TURANT:   Yes.
    (Doc. 135, N.T. 2/23/2004 at 4).
During the rest of the guilty plea, the defendant made appropriate coherent responses and indicated that he understood the proceedings.  No indication to the contrary appears on the record.

Brady material is without merit, and it will be denied.[8]

    7. Harassment

Finally, Turant sets forth an harassment claim in which he claims that a government agent made telephone calls to his residence regarding this case that led him to plead guilty.

We find no merit to this claim. During the guilty plea hearing, the court asked the defendant if anyone had forced, threatened, coerced or induced him in anyway to enter the guilty plea. (Doc. 135, N.T. 2/23/2004 at 24). The defendant answered in the negative. (Id.).

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of veracity. " Blackredge v. Allison, 431 U.S. 63, 73-74 (1977). Defendant's assertions of harassing telephone calls from a government agent does not rebut the strong presumption of the veracity of his statement during the guilty plea that he was not in fact coerced into entering the guilty plea. Accordingly, this claim will be denied.

**Conclusion**

For the reasons set forth above, the defendant's section 2255 motion will

---

    [8]Additionally, to assert a valid claim under Brady, the defendant would have to point to specific evidence that the government withheld. United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005). Defendant has not provided specific evidence that was withheld, but merely asserts that people he worked with and did business with knew he was not in charge of the criminal enterprise but his co-defendant Luciano was in control of it. These witnesses allegedly shared this information with the United States Attorney's office. (Doc. 131 at 10). These assertions are very vague and do not allege statements made by specific witnesses.

be denied except for the assertion that his Attorney Douglas Clark was ineffective for failing to file a direct appeal.  We reserve ruling on that issue until we have a hearing on it.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. 3:03cr245-01<br>No. 3:06cv1039 |
| v. | |
| **JOHN F. TURANT,**<br>    **Movant / Defendant** | **(Judge Munley)** |

## ORDER

    **AND NOW**, to wit, this 8th day of May 2008, the defendant's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is hereby **DENIED** except for the claim that his attorney was ineffective for failing to file a direct appeal.  We reserve judgment on this issue and will schedule a hearing on it by separate order of court.

    So that this matter proceeds in an orderly fashion, this order will not be final for purpose of appeal until we have resolved the issue ineffectiveness claim against Attorney Clark.  Thus, time for filing an appeal on this order will not begin to run until we have ruled upon the remaining issue.

                                   **BY THE COURT:**

                                   **s/ James M. Munley**
                                   **JUDGE JAMES M. MUNLEY**
                                   **United States District Court**